# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# FLORENCE DIVISION

| | | |
|---|---|---|
| **Susan S. Jones** | ) | **COMPLAINT** |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. _____** |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL** |
| **Mann Bracken, LLP,** | ) | **DEMANDED** |
| **Ken Jarrett, an individual, and** | ) | |
| **Mrs. Green an individual,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

1. This is an action brought by the Plaintiff, Susan Jones, for actual and statutory damages, attorneys' fees, and costs for Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (hereinafter "FDCPA"). Plaintiff also seeks compensatory and punitive damages for the Defendants violations of South Carolina common law set forth herein.

## JURISDICTION AND VENUE

2. This Court has Jurisdiction under 15 U.S.C. §1692k (d), and 28 U.S.C. §1331, §1332, and §1367.

3. Venue is proper in the Florence Division because the Plaintiff resides in Horry County and the Defendants transacted business in this division.

## PARTIES

4. The Plaintiff, Susan Jones, is a resident and citizen of the State of South Carolina, Horry County, and is over the age of twenty-one (21) years.

5. The Defendant, Mann Bracken, LLP is a Delaware corporation registered to do business in South Carolina with the South Carolina Secretary of State. Defendant Mann Bracken can be served through its registered agent for service of process at CT Corporation System, 75 Beattie Place, Greenville, SC 29601. The Defendant, was in all respects and at all times relevant herein, doing business in the state of South Carolina and in this Division. The Defendant is engaged in the business of collecting consumer debts from consumers residing in Horry County, South Carolina and is a "debt collector," as defined by the FDCPA 15 U.S.C. § 1692a(6).

6. Defendant Ken Jarrett is a natural person employed by Defendant Mann Bracken, LLP, as a collection agent and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6). Upon information and belief, Defendant Jarrett is a resident and citizen of North Carolina.

7. Defendant Mrs. Green is a natural person employed by Defendant Mann Bracken, LLP, as a collection agent and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6). Upon information and belief, Defendant Green is a resident and citizen of North Carolina.

## FACTUAL ALLEGATIONS

8. Beginning in or around May, 2007, and continuing through February, 2009, the Defendants, its agents and employees, have called the Plaintiff at home and at work multiple times during the week, with multiple calls on the same day, with the intent to harass, annoy, and intimidate the Plaintiff. Additionally, the Defendants have repeatedly contacted the Plaintiff's mother, with whom the Plaintiff does not live.

9. On or about November 1, 2007, the Defendant Mann Bracken filed suit against the Plaintiff on behalf of Arrow Financial Services, LLC in the Horry County Court of Common Pleas.

10. On January 3, 2008, the Plaintiff filed an Answer claiming that the action was barred by the Statute of Limitations.

11. While this litigation was pending, Defendants repeatedly telephoned the Plaintiff as well as the Plaintiff's family regarding the underlying alleged debt.

12. The Defendants had full contact information for the Plaintiff but chose to intentionally call the Plaintiff's mother, Dorothy Sanders. During this call the Defendants asked if the Plaintiff was there. Ms. Sanders told them that they could not reach the Plaintiff at her number, she did not live there. Despite being told that the Plaintiff does not live with her mother, the Defendants continued to call the Plaintiff's mother on several occasions.

13. On or about May 6, 2008, the Defendant Mann Bracken filed a Motion for Summary Judgment in the case pending in the Horry County Court of Common Pleas.

14. In July, 2008, the Plaintiff began the process to refinance her home in order to settle the debt sued upon by Arrow Financial Services, LLC.

15. Once the Plaintiff began the process to refinance her home, Defendant Jarrett began repeatedly calling Ed Tyler, the mortgage loan originator who was helping the Plaintiff refinance her home. In the calls to Mr. Tyler, Defendant Jarrett demanded to know when payment was going to be sent to Mann Bracken, and also demanded payment in excess of the funds that were going to be available to the Plaintiff after the refinance. Mr. Tyler informed Defendant Jarrett on several occasions that the Plaintiff was only going to have $4,992 available to settle the account, but Defendant Jarrett continued to demand more.

16. After one of the telephone conversations with Mr. Tyler, Defendant Jarrett called the Plaintiff at work. The Plaintiff informed Defendant Jarrett that she could not discuss the matter at work and that Defendants could not call her at work.

17. The next week, Defendant Jarrett called the Plaintiff at home to discuss a settlement of the account. Defendant Jarrett continued to demand $7,000.00,

but the Plaintiff told him that she only had $5,000 and that was the most she could ever pay.

18. On or about July 31, 2008, Defendant Jarrett called the Plaintiff back at work to collect the $5,000. At the time of this call the Plaintiff was in the workroom with three of her co-workers. Defendant Jarrett insisted that the Plaintiff give him her checking account information so that he could draft the payment of $5,000. Defendant Jarrett called the Plaintiff three times that day, including one call on the Plaintiff's cell phone, and each time he requested the same information that the Plaintiff had already given him. The last call took place in the evening. During the last call, Defendant Jarrett put Defendant Green on the telephone to confirm the settlement amount and the check information. Following the confirmation, Defendant Jarrett agreed that the $5,000 would settle the account and that he would send the Plaintiff a confirmation letter that the account was settled.

19. On or about July 31, 2008, the Defendants drafted $5,020 out of the Plaintiff's checking account.

20. Since July 31, 2008, the Defendants have never sent the confirmation letter that was to be sent after payment.

21. On or about September 2, 2008, a hearing took place on Defendant's Motion for Summary Judgment in the lawsuit filed by Defendant on behalf of Arrow.

The Plaintiff specifically informed that Court that she had settled the account by paying $5,000. However, Defendant Mann Bracken's representative falsely represented to the Court that the $5,000 payment was not a settlement but rather just a payment.

22. Between October 6, 2008 and October 9, 2008, Defendants called the Plaintiff everyday and continually left messages demanding the Plaintiff call them back.

23. On or about November 1, 2008, the Plaintiff received a call from Debra Joiner, a collector for Mann Bracken. During this call Joiner told the Plaintiff that "this case was on my desk" and she needed to speak with the Plaintiff. The Plaintiff informed Joiner that the account had been settled. Thereafter, Joiner admitted that she saw where Defendant Jarrett had accepted the $5,000 as settlement and that she would mark the case closed and have the pending court case dismissed. Then Defendant Green got on the phone and very angrily stated that Defendant Jarrett's settlement was not right and that she was pulling this file. The Plaintiff hung up and Defendant Green immediately called her back. The Plaintiff was so upset by the previous call that she did not answer the call back.

24. Since November 1, 2008, the Defendants have continued to call and harass the Plaintiff at home and at work, and have left messages for the Plaintiff on the household answering machine.

25. On or about February 13, 2009, the Defendants telephoned the Plaintiff at work and identified themselves to the receptionist as a law office that needed to speak with the Plaintiff.

26. To date, the Defendants have continued to keep the underlying matter pending, despite the Plaintiff's settlement of the account and the Defendants' acceptance of that settlement on behalf of their client.

## COUNT ONE
## FAIR DEBT COLLECTIONS PRACTICES ACT

27. The Plaintiff adopts the averments and allegations of paragraphs 8 through 26 hereinbefore as if fully set forth herein.

28. The Defendants have engaged in collection activities and practices in violation of the Fair Debt Collection Practices Act (hereinafter referred to as "FDCPA") with respect to the Plaintiff's alleged consumer debt.

29. The Defendants violated §1692b by contacting the Plaintiff's mother and Ed Tyler, third parties, and disclosing to them information regarding an alleged debt owed by the Plaintiff.

30. The Defendants violated §1692c(a)(1) by contacting the Plaintiff at work, a place Defendants knew or should have known was inconvenient to the Plaintiff.

29. The Defendants violated §1692c(b) by contacting Plaintiff's mother and Ed Tyler, third parties, and disclosing to them information regarding an alleged

debt owed by the Plaintiff, without the express permission of the Plaintiff.

30. The Defendants violated §1692d by engaging in conduct the natural consequence of which was to harass, oppress, or abuse the Plaintiff by using language the natural consequence of which is to abuse the hearer; and by repeatedly telephoning the Plaintiff with the intent to annoy, abuse, or harass the Plaintiff in an effort to coerce her into paying a debt in violation of §1692d(5).

31. The Defendants violated §1692e by making false and misleading representations to the Plaintiff. At the time the Defendants made these representations to the Plaintiff, the Defendants knew, or should have known, that said representations were false. Said representations made by Defendants were made recklessly, willfully, and/or intentionally.

32. The Defendants used false representations and/or deceptive means to collect a debt or obtain information concerning the Plaintiff in violation of §1692e(10).

33. As a proximate result of the Defendants' actions, the Plaintiff was caused to suffer actual damages for worry, humiliation, fear, frustration, loss of peace and quiet, loss of sleep, anxiety, nervousness, physical sickness, physical pain and mental anguish.

## COUNT TWO
## NEGLIGENT TRAINING AND SUPERVISION

34. The Plaintiff adopts the averments and allegations of paragraphs 8 through 33 hereinbefore as if fully set forth herein.

35. Defendant Mann Bracken knew or should have known of the conduct set forth herein which was directed at and visited upon the Plaintiff.

36. Defendant Mann Bracken knew or should have known that said conduct was improper and in violation of the FDCPA and South Carolina state law.

37. Defendant negligently failed to train and supervise collectors in order to prevent said improper conduct.

38. Defendant negligently failed to train and supervise collectors on the FDCPA and South Carolina law as it relates to communications with consumers.

39. As a result of the Defendant's negligence, the Plaintiff suffered humiliation, loss of sleep, anxiety, nervousness, physical sickness, physical and mental suffering, pain, and anguish.

## COUNT THREE
## RECKLESS AND WANTON TRAINING AND SUPERVISION

40. The Plaintiff adopts the averments and allegations of paragraphs 8 through 39 hereinbefore as if fully set forth herein.

41. Defendant Mann Bracken knew or should have known of the conduct set forth herein which was directed at and visited upon the Plaintiff.

42. Defendant knew or should have known that said conduct was improper and in

violation of the FDCPA and South Carolina state law.

43. Defendant recklessly and wantonly failed to train and supervise collectors in order to prevent said improper conduct.

44. Defendant recklessly and wantonly failed to train and supervise collectors on the FDCPA and South Carolina law as it relates to communications with consumers.

45. As a result of the Defendant's recklessness and wantonness, the Plaintiff suffered humiliation, loss of sleep, anxiety, nervousness, physical sickness, physical and mental suffering, pain, and anguish.

## COUNT FOUR
## ABUSE OF PROCESS

46. The Plaintiff adopts the averments and allegations of paragraphs 8 through 45 hereinbefore as if fully set forth herein.

47. On or about July 31, 2008, the Defendants, on behalf of Arrow Financial Services, agreed to accept $5,000 as full and final settlement on the underlying litigation pending in the Horry County Court of Common Pleas.

48. As a result of the Defendants' agreement to accept $5,000, the Plaintiff provided the Defendants her checking account information and specifically allowed the Defendants to withdraw $5,020 to cover the settlement in full and a $20.00 service charge.

49. Defendants deposited the check into their checking account and said check cleared on August 4, 2008.

50. Since July 31, 2008, when Defendants agreed to accept the $5,000 as full and final settlement, the Defendants have continued to proceed in the underlying litigation. Specifically, Defendants proceeded with a hearing on their Motion for Summary Judgment. During this hearing the Defendant, Mann Bracken's representative was completely unaware of the settlement. When the Plaintiff informed the Court that the matter had been settled, Mann Bracken's representative asked the Court to call the office regarding this matter. When the representative returned, he informed the Court that said payment was not a settlement. As a result, summary judgment was granted in favor of Arrow Financial.

51. Since the entry of the summary judgment, Defendants have continued to call and harass the Plaintiff in an effort to extort additional funds for payment on the account.

52. Defendants are aware that the $5,000 payment was settlement of the account.

53. Defendants have improperly used judicial process to seek to force the Plaintiff to make additional payments on a debt that it had already accepted a settlement on in the amount of $5,000.

54. Defendants therefore used this judicial process to gain an objective which is

not legitimate, and an ulterior purpose exists.

55. Defendants sought to accomplish this ulterior purpose fraudulently, willfully, wantonly and maliciously by the aforesaid misuse of the judicial system of South Carolina and by obtaining an illegal summary judgment.

56. As a direct and proximate result of the foregoing, the Plaintiff has been injured and damaged, as aforementioned, and she is informed and believes that she is entitled to an award of actual damages from Defendants (including attorney's fees), in addition to an award of punitive damages for Defendants' reckless, willful and wanton disregard of her rights.

## COUNT FIVE
(Violation of the South Carolina Consumer Protection Code,
S.C. Code Ann. §39-5-10, *et. seq.* - Unfair Trade Practices

57. The Plaintiff hereby adopts all of the allegations set forth in paragraphs 8 through 56 as if set forth fully herein.

58. The activities of Defendant Mann Bracken constitute "trade or commerce" as defined by South Carolina Code §39-5-10, *et. seq.* (As amended).

59. The actions of Defendant Mann Bracken described above constitute unfair and deceptive acts and practices in the conduct of trade and commerce, as prohibited by the South Carolina Unfair Trade Practices Act, §39-5-10 *et.seq.* and are knowing and willful violations thereof.

60. The Plaintiff further alleges that the actions of Defendant Mann Bracken have

a real and substantial potential for repetition and are a threat to the public interest.

61. The Plaintiff has suffered an ascertainable loss due to the unlawful actions of Mann Bracken is entitled, under § 39-5-140, to recover actual damages in an amount to be proven at trial, treble said actual damages for Mann Bracken's knowing and willful behavior, and an award of reasonable attorney's fees and costs.

## COUNT SIX
## FRAUD

62. The Plaintiff adopts the averments and allegations of paragraphs 8 through 61 hereinbefore as if fully set forth herein.

63. On or about July 31, 2008, the Defendants represented to Plaintiff that if she paid $5,000 on the alleged account, that said amount would settle the matter in full. Said communications were expressly made.

64. The Plaintiff relied on Defendants' communications and provided the Defendants her checking account information. Thereafter, the Defendants withdrew $5,020 from the Plaintiff's checking account.

65. At the time Defendants made those representations to Plaintiff, Defendants knew or should have known that said representations were false and knew that said representations were made with the purpose to induce Plaintiff, to her

detriment, to rely upon them and pay the $5,000.

66. The Plaintiff believed the representations made by Defendants and relied upon said representations and acted upon them, to her detriment, by providing her checking account information and allowing Defendants to withdraw $5,020 from her checking account.

67. As a proximate result of said fraud, the Plaintiff was caused to suffer pecuniary losses, mental anguish, physical sickness and suffering, embarrassment and humiliation. Additionally, the Plaintiff has been caused to continue the underlying case as Defendants have continued to represent to the court that said payment was not a settlement.

68. The Plaintiff claims punitive damages of the Defendants because of the intentional and/or gross and reckless nature of the fraud.

69. The Defendants intentionally and fraudulently induced the Plaintiff into providing her checking account information and into paying $5,020 on the account.

## **AMOUNT OF DAMAGES DEMANDED**

WHEREFORE, PREMISES CONSIDERED, the Plaintiff demands a judgment against the Defendants as follows:

    A.    Statutory damages of $1,000 to the Plaintiff from each Defendant for the violations of the FDCPA (15 U.S.C. §1692k);

B. Actual damages for Defendants' violations of the FDCPA;

C. Costs and reasonable attorney's fees from the Defendants pursuant to 15 U.S.C. § 1692k;

D. Compensatory and punitive damages against Defendants in an amount to be determined by a struck jury on Plaintiff's state law claims for damages due to the Defendants' Negligent Training and Supervision, Reckless and Wanton Training and Supervision, Abuse of Process, and Fraud;

E. For Plaintiff's actual damages resulting from Defendant Mann Bracken's unfair and deceptive practices, plus for those damages to be trebled by the Court as it deems proper, and attorney's fees against Defendant for its violations of Sections 39-5-10, *et seq.* of the South Carolina Code of Laws Annotated; and

F. For such other and further relief as the Court may deem just and proper.

/s/ Penny Hays Cauley  
Penny Hays Cauley, Fed. ID No. 10323  
Attorney for Plaintiff

**OF COUNSEL:**  
HAYS CAULEY, P.C.  
549 West Evans Street, Suite E  
Florence, SC 29501  
(843) 665-1717  
(843) 665-1718 Facsimile  
phc917@hayscauley.com

## PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY ON ALL COUNTS

/s/ Penny Hays Cauley
Penny Hays Cauley

**DEFENDANTS TO BE SERVED VIA CERTIFIED MAIL:**
Mann Bracken, LLP
C/o CT Corporation System
75 Beattie Place
Greenville, SC 29601

Ken Jarrett (Restricted Delivery)
c/o Mann Bracken, LLP
9930 Kincey Avenue
Floor 3
Huntersville, NC 28078

Mrs. Green (Restricted Delivery)
c/o Mann Bracken, LLP
9930 Kincey Avenue
Floor 3
Huntersville, NC 28078